UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GABRIEL ECKARD, | Case No. C18-1053-JCC-JPD |
| Plaintiff, | REPORT AND RECOMMENDATION |
| v. | |
| ASEN DESHEV, *et al*., | |
| Defendants. | |

## I.    INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action brought under 42 U.S.C. § 1983.  Plaintiff Gabriel Eckard is a former inmate at the Monroe Correctional Complex ("MCC") who was housed in the Special Offenders Unit ("SOU").  Dkt. 6 at 3-4.  Plaintiff's civil rights claims arise out of sanctions he received while incarcerated at MCC.  Specifically, plaintiff alleges the denial of access to books as a sanction resulting from two serious infractions violated his First Amendment right and also violated his Eighth Amendment right by exacerbating his mental illness.  *Id.* at 6-7. Plaintiff identifies Correctional Mental Health Custody Unit Supervisor Asen Deshev, Superintendent Eric Jackson, Sergeant Breanne Caraway, and Sergeant Brian Wilmoth as defendants.  *Id.* at 2-3.

REPORT AND RECOMMENDATION
PAGE - 1

Defendants now move for summary judgment.  Dkt. 19.  Plaintiff opposes defendants'
motion.  Dkt. 23.  The Court, having reviewed the defendants' motion, plaintiff's response,
defendants' reply, and the balance of the record, ORDERS that the motion should be granted,
and that this action should be dismissed with prejudice.

## II.    BACKGROUND

### A.    Factual History

Plaintiff was housed in the SOU at MCC, a specialized unit equipped to handle
severely mentally ill inmates, from April 2017 to September 2018.  Dkt. 17 (Caraway Decl.), ¶
4-5; Dkt. 18 (Deshev Decl.) at ¶ 7.  The SOU is a segregated and maximum custody housing
unit and is a highly regulated environment.  Dkt. 18 (Deshev Decl.), ¶ 4; Dkt. 6 at 5.
According to defendants, plaintiff was housed in the SOU pursuant to a court order which
required him to be housed near the Snohomish County Superior Court and not because of any
mental illness.  Dkt. 17 (Caraway Decl.) at ¶ 5.  According to plaintiff, he was housed in
solitary confinement while incarcerated in the SOU.  Dkt. 23 at 7.  During his incarceration,
plaintiff received 338 major infractions and, over a period of 18 months, was sanctioned 54
times.  Dkt. 17 (Caraway Decl.), ¶ 6; Dkt. 18 (Deshev Decl.) at ¶ 9.

The parties disagree as to plaintiff's behavior prior to the sanctions at issue in this
matter.  Defendants present evidence that plaintiff sexually harassed a female correctional
officer from his cell.  Dkt. 16 (Ewing Decl.), Ex. 5 (Serious Infraction Report IGN 294).
Specifically, defendants assert that on December 9, 2017, plaintiff yelled "Melania, you nasty
bitch, look at you, you're disgusting.  Those conditions I had went away the next day, the
counselor was here and laughed at how stupid you were.  How do you like that they're gone
now?  You have a flat ass, one of those wetback flat asses." *Id.*  Defendants also present

REPORT AND RECOMMENDATION
PAGE - 2

evidence that plaintiff threatened to kill the same correctional officer on January 2, 2018. *Id.*, Ex. 12 (Serious Infraction Report IGN 299). Defendants assert plaintiff stated "I'm waiting for more infractions from you bitch, just wait, 8 more months. I get out in 8 more months and I'm going to carve you up, I'm going to stab the fuck out of you. I'll find your address from public disclosure and I'm going to kill you bitch. I'm going to show up at your house and stab you." *Id.* Plaintiff denies making both statements in his response to the motion for summary judgment. Dkt. 23 at 1.

The parties agree that disciplinary hearings were held for both infractions, and that plaintiff was not present for either. However, plaintiff asserts he was never given notice of the hearings. *Id.* at 1. Defendants assert plaintiff did receive notice, but waived his right to attend the hearings. Dkt. 16 (Ewing Decl.), Exs. 1, 8. In support of their assertion, defendants provide disciplinary hearing notice/appearance waivers for each infraction which have "refused to sign" written in the space designated for plaintiff's signature. *Id.*, Exs. 1, 8. Defendants also provide infraction review checklists, disciplinary hearing minutes and findings, initial serious infraction reports, and serious infraction reports for both disciplinary hearings. *Id.*, Exs. 2-5, 9-12. Plaintiff appealed both disciplinary hearing findings. *Id.*, Exs. 6, 13. Both appeals were denied. *Id.*, Exs. 7, 14.

On April 30, 2018, defendant Sgt. Caraway provided plaintiff a sanction notification for his December 9, 2017 infraction. Dkt. 17 (Caraway Decl.), ¶ 7; Ex. 1. The notice advised plaintiff that he would be sanctioned with a 60-day loss of personal property and access to the prison store from May 1, 2018 to June 30, 2018. *Id.*, Ex. 1. On May 26, 2018, plaintiff received a sanction notification for his January 2, 2018 infraction. *Id.*, ¶ 8, Ex. 2. The notice

advised plaintiff that he would be sanctioned with a 60-day loss of access to the book cart, outdoor recreation, and phone from May 27, 2018 to July 27, 2018. *Id.*, Ex. 2.

On June 7, 2018, Correctional Officer ("C/O") Jeff Stringham presented plaintiff with a receipt for four books that were mailed to him. Dkt. 6, Ex. 1. After plaintiff signed the receipt, C/O Stringham declined to give plaintiff the books due to plaintiff's sanctions that restricted his access to personal property. *Id.* at ¶11, Ex. 1. Plaintiff submitted an initial grievance that same day requesting access to his books. *Id.* at Ex. 1. DOC staff advised plaintiff that he was not authorized to have books due to his sanctions, but that he could request them after the sanctions expired. *Id.* Plaintiff appealed, but his appeal was denied because it was untimely. *Id.* at 3.

B.    Procedural History

Plaintiff initiated this action on July 16, 2018. Dkt. 1. He claims the sanctions restricting his access to personal property, including books, were a violation of his First and Eighth Amendment rights. Dkt. 1-1, 6. Plaintiff also asserts the sanctions were a violation of WA 137-32-030, which is incorporated in DOC policy 320.255 for restrictive housing. Dkt. 23 at 2. He further asserts that DOC policy 460.050, which outlines disciplinary sanctions, was inapplicable to him because he was in a segregation unit, and therefore the sanctions were a violation of established department policy. *Id.* Plaintiff seeks declaratory relief, a preliminary injunction, a permanent injunction, compensatory damages, punitive damages, and costs. Dkt. 6 at 7.

Defendants filed the instant motion for summary judgment on November 16, 2018. Dkt. 19. Plaintiff filed his response to defendants' motion for summary judgment on

REPORT AND RECOMMENDATION
PAGE - 4

December 6, 2018.  Dkt. 23.  Defendants filed their reply to plaintiff's response on December 14, 2018.  Dkt. 25.

III.    DISCUSSION

A.  Legal Standards for Summary Judgment and 42 U.S.C. § 1983

Summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  That genuine issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

When applying these standards, the Court must view the evidence and draw reasonable inferences in the light most favorable to the non-moving party.  *See United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006).  The moving party can carry its initial burden by producing evidence that negates an essential element of the nonmoving party's claim, or by establishing that the nonmoving party does not have enough evidence of an essential element to satisfy its burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once this has occurred, the procedural burden shifts to the party opposing summary judgment, who must go beyond the pleadings and affirmatively establish a genuine issue on the merits of the case.  Fed. R. Civ. P. 56(e).  The nonmovant must do more than simply deny the veracity of everything offered by the moving party or show a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986).  To avoid summary judgment, the nonmoving party must, in the words of Rule 56, "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The nonmoving party's failure of proof concerning an essential element of its case necessarily "renders all other facts immaterial," creating no genuine issue of fact and thereby entitling the moving party to summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must set forth the specific factual bases upon which he claims each defendant is liable.  *Aldabe v. Aldabe*, 606 F.2d 1089, 1092 (9th Cir. 1980).  Specifically, a plaintiff must show (1) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state or federal law.  *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the constitutional or statutory violations alleged in the complaint.  *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

B.  Plaintiff's First Amendment Claims Fail

Plaintiff's claims can be construed as a challenge to DOC policy 460.050, which provides for the sanctions that denied plaintiff access to books on June 7, 2018. [1]  The policy directs DOC staff to conduct hearings for general and serious violations.  Dkt. 18 (Deshev Decl.), Ex. 3 (DOC Policy 460.050).  It advises that "[s]anctions are intended to impact and guide offender behavior rather than to punish, and will be determined based on the

---

[1] Plaintiff argues DOC policy 460.050 does not apply to prisoners in segregation, and therefore the sanctions should not have applied to him.  Dkt. 23 at 2-3.  Plaintiff argues only DOC policy 320.255, which provides, in relevant part, that prisoners in segregation are allowed access to reading materials unless safety or security considerations dictate otherwise, applies to him.  *Id.* at 4.  Plaintiff has provided no evidence that the policies are mutually exclusive, and therefore the Court concludes DOC policy 460.050 applies to plaintiff.

circumstances, seriousness of the offense, and offender's previous conduct record." *Id.* at 1.  It

encourages disciplinary hearing officers to use sanctions such as loss of privileges, extra duty,

or change in housing assignments.  *Id.* at 3.[2]

Plaintiff argues the sanctions violated his First Amendment rights.  Dkt. 6 at 3-7.  He

further argues the sanctions are not related to a penological need, as there were no safety or

security concerns related to him possessing books.  *Id.* at 6.  Defendants argue plaintiff's

claims fail, because there is a legitimate penological interest in applying sanctions to certain

inmates. Dkt. 19 at 7.[3]  Specifically, they assert there is an interest in motivating better

behavior on the part of difficult prisoners to maintain order and discipline within DOC

facilities.  *Id.* at 8, 10.

Imprisonment does not automatically deprive a prisoner of certain important

constitutional protections, including those of the First Amendment.  *Turner v. Safley*, 482 U.S.

78, 93 (2006); *see also O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987).  "[S]imply

because prison inmates retain certain constitutional rights does not mean that these rights are

not subject to restrictions and limitations.  Lawful incarceration brings about the necessary

withdrawal or limitation of many privileges and rights … ."  *Bell v. Wolfish*, 441 U.S. 520,

545–46 (1979) (citation and internal quotation marks omitted).  A prison regulation can

impinge on First Amendment rights "if it is reasonably related to a legitimate penological

interest." *Turner*, 482 U.S. at 89.

---

[2] Although access to books is not enumerated in the loss of privileges list in DOC policy 460.050, the list is not exhaustive.  Dkt. 18 (Deshev Decl.), Ex. 3 at 3.

[3] Defendants alternatively argue plaintiff's claims are precluded by *Edwards v. Balisok*, 520 U.S. 641 (1997) because the claims can be construed as a challenge to the sanctions imposed themselves.  *Id.* at 6.  Because plaintiff claims the sanctions are illegal, the Court construes his claims as a challenge to DOC policy 460.050.  As a result, his claims are not barred by *Edwards*.

REPORT AND RECOMMENDATION
PAGE - 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

　　　　In determining whether a prison regulation is reasonably related to a legitimate penological interest, the court should consider the following *Turner* factors: (1) whether there is a valid, rational connection between the regulation and the interest used to justify the regulation; (2) whether prisoners retain alternative means of exercising the right at issue; (3) the impact the requested accommodation will have on inmates, prison staff, and prison resources generally; and (4) whether the prisoner has identified easy alternatives to the regulation which could be implemented at a minimal cost to legitimate penological interests. *Turner*, 482 U.S. at 89–91.

　　　　The first of these factors is the most important.  *See Prison Legal News v. Lehman*, 397 397 F.3d 692, 699 (9th Cir. 2005); *Ashker v. Cal.  Dep't of Corr.*, 350 F.3d 917, 922 (9th Cir. 2003); *Morrison v. Hall*, 261 F.3d 896, 901 (2001); *Prison Legal News v. Cook*, 238 F.3d 1145, 1151 (9th Cir. 2001); *Walker v. Sumner*, 917 F.2d 382, 385 (9th Cir. 1990).  Legitimate penological interests include "the preservation of internal order and discipline, the maintenance of institutional security against escape or unauthorized entry, and the rehabilitation of the prisoners."  *Procunier v. Martinez*, 416 U.S. 396, 412 (1974) (footnote omitted), *limited by Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Beard v. Banks*, 548 U.S. 521, 530–31 (2006) (motivating better behavior on the part of particularly difficult prisoners); *Crime Justice & Am., Inc.*, 876 F.3d 966, 975 (9th Cir. 2017) ("Maintaining security in a jail is inarguably a legitimate government interest."); *Mauro v. Arpaio*, 188 F.3d 1054, 1059 (9th Cir. 1999) (en banc) (protecting guards; preventing prisoners from sexually harassing guards).  Courts should afford prison officials great deference when analyzing the constitutional validity of prison regulations. *See Beard*, 548 U.S. at 528-30; *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

REPORT AND RECOMMENDATION
PAGE - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*1. The* Turner *Factors*

The first and most important *Turner* factor concerns the connection between a regulation and the interest justifying it. Defendants have set forth a valid and rational connection between DOC policy 460.050 and the interest in the preservation of internal order and discipline in DOC facilities. Specifically, defendants have provided evidence that the sanctions are needed to impact and guide inmate behavior. Plaintiff was housed in the SOU, an already highly regulated environment in which prisoners have limited access to privileges and activities. In addition to plaintiff's previous misconduct which resulted in 54 sanctions, he continued to display problematic behavior by sexually harassing a correctional officer and later threatening to kill that same officer. Denying prisoners access to books or other privileges in an attempt to improve such problematic conduct is rational. Because motivating better behavior on the part of particularly difficult prisoners is a legitimate penological interest, the first *Turner* factor supports the reasonableness of the policy.

The second *Turner* factor concerns whether prisoners retain alternative means of exercising the right at issue. Defendants concede plaintiff likely did not have an alternative means of accessing books during the time he was sanctioned. Dkt. 19 at 9.[4] While the lack of any alternative may present some evidence that the policy is unreasonable, it is not conclusive of the reasonableness of the policy. *Beard*, 548 U.S. at 532; *Overton*, 539 U.S. at 135.

The third *Turner* factor, concerning the impact of the regulation, supports the reasonableness of the policy. Depriving prison staff of the ability to impose sanctions to

---

[4] It appears from plaintiff's chronos records that he received a USA Today newspaper on May 1, 2018 and May 10, 2018, after the sanctions were imposed. Dkt. 18 (Deshev Decl.), Ex. 4 (chronos records). It is unclear from the record if plaintiff received other reading materials during the period he was sanctioned. However, viewing the evidence in the light most favorable to plaintiff, the Court assumes that plaintiff did not have access to reading material due to the sanctions imposed on him by defendants.

REPORT AND RECOMMENDATION
PAGE - 9

incentivize better behavior by problematic prisoners would have a negative impact on both prison staff and resources. While the temporary loss of access to books may negatively impact prisoners, restricting prison staff from addressing a prisoner who is sexually harassing and threatening to kill correctional officers would have a greater negative impact on the institution. The third *Turner* factor therefore supports the reasonableness of the policy.

Finally, with regard to the fourth *Turner* factor, plaintiff has not identified any easy alternatives to the policy allowing for sanctions that deny access to books which could be implemented at a minimal cost to legitimate penological interests.

Accordingly, the *Turner* factors weigh in favor of defendants, who have shown a reasonable relation between the policy of imposing sanctions that deprive prisoners access to books and the interest in the preservation of internal order and discipline in DOC facilities by guiding prisoners' behavior. The policy is therefore valid as it reasonably relates to a legitimate penological interest.

### C.    Plaintiff's Policy Claims Fail

Plaintiff argues the sanctions that denied him access to books pursuant to DOC policy 460.050 violated DOC policy 320.255 and WAC 137-32-030. Dkt. 23 at 4. DOC policy 320.255 provides prisoners in segregation will be provided access to reading materials, mail, and the library, unless safety or security considerations dictate otherwise. Dkt. 18, Ex. 2 (DOC Policy 320.255) at 3-4. WAC 137-32-030 provides, in relevant part, that an inmate placed in an intensive management or administrative segregation unit shall, unless safety or security considerations dictate otherwise, be afforded rights to reading material(s), the library, and law library. WAC 137-32-030(e) and (k).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Because plaintiff did not name Monroe County as a defendant, plaintiff cannot prevail on a claim that a policy, custom, or permanent and well-established practice gave rise to his alleged constitutional violation. *See Bryan County Commissioners v. Brown,* 520 U.S. 397, 403 (1997); *City of St. Louis v. Praprotinik*, 485 U.S. 112, 127 (1988); *Monell v. Department of Social Servs., of City of New York,* 436 U.S. 658, 691 (1978). In addition, both DOC policy 320.255 and WAC 137-32-030 provide that access to reading materials may be restricted if safety or security considerations are implicated. Defendants have established the sanctions were imposed in an effort to improve plaintiff's problematic behavior of sexually harassing and threatening to kill correctional officers, which implicates both safety and security concerns. Accordingly, plaintiff's claims that the sanctions denying him access to books violate DOC policy 320.255 and WAC 137-32-030 fail.

D. Plaintiff's Due Process Claims Fail

As noted above, plaintiff asserts his due process rights were violated when he was denied an opportunity to attend his disciplinary hearings for the December 9, 2018 and January 2, 2018 infractions. Dkt. 23 at 1. He argues this is evidenced by the fact he did not complete the form which provides prisoners with notice of disciplinary hearings. *Id.* Defendants assert plaintiff was given notice of both disciplinary hearings, but waived his right to appear and refused to sign the notices. Dkt. 25 at 1-2. Defendants also assert he waived his right to request witnesses for the hearings. *Id.* at 2. Further, they assert plaintiff received disciplinary hearing minutes and findings, which stated the evidence relied on and reasons for the findings of guilt for each hearing. *Id.*

"[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which

REPORT AND RECOMMENDATION
PAGE - 11

they have been lawfully committed." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). When a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written notice of the charges at least twenty-four hours before the disciplinary hearing; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional safety or correctional goals; and (3) a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action. *Id.* at 564–66.

Here, evidence shows plaintiff was presented with notices of his disciplinary hearings on December 13, 2017 and January 3, 2018, before the hearings were conducted, but he refused to sign the notices to acknowledge receipt, apparently stating in one instance "my lawyer is going to overturn all these you can't keep me here I got no good time left and I still get out." Dkt. 16 (Ewing Decl.), Exs. 1, 8. Thus, the evidence reflects plaintiff waived his right to attend the disciplinary hearings, call witnesses, and present documentary evidence. He was also provided disciplinary hearing minutes and findings, which included the evidence relied on and the reasons for the disciplinary action. *Id.*, Exs. 3, 10. Additionally, he received initial serious infraction reports and serious infraction reports. *Id.*, Exs. 4-5, 11-12. Because plaintiff received all the due process required, but declined to exercise his rights, plaintiff has provided no evidence that his due process rights were violated by defendants at his disciplinary hearings.

E. Plaintiff's Eighth Amendment Claims Fail

Plaintiff argues that the denial of access to books exacerbated his mental health by denying him the only meaningful activity – reading – allowed due to his conditions of confinement. Dkt. 6 at 6-7. Plaintiff alleges defendant Deshev, the correctional mental health

custody unit supervisor, failed to affirmatively provide defendant books, and likewise failed to provide him books which plaintiff alleges he was legally required to do by DOC policy 320.255 and WAC 137.32.030. Dkt. 23 at 13. He similarly argues defendant Jackson, the superintendent, affirmatively allowed others to deny him books, and failed to enforce department policy to prevent the segregation unit staff "to do whatever they want." *Id.* at 13-14. Plaintiff further argues defendants were aware that the denial of books would increase his risk of suicide ideation and attempts, rising to the level of cruel and unusual punishment. Dkt. 6 at 6-7. In his response, plaintiff also asserts that his general conditions of confinement, solitary confinement, exacerbated his mental health and violated his Eighth Amendment rights. Dkt. 23 at 7-13. He argues defendants knew or should have known solitary confinement would exacerbate his mental health. *Id.*

Defendants argue plaintiff cannot show deliberate indifference on behalf of defendants, because plaintiff received mental health treatment during his incarceration. Dkt. 19 at 10-11. They also argue plaintiff has failed to show he sought any serious medical assistance that was denied by defendants. *Id.* Further, defendants argue that defendants Jackson and Deshev cannot be liable because of their supervisory positions, and that plaintiff failed to plausibly allege personal participation in any alleged constitutional violation by either of those defendants. *Id.* at 11-12.

### 1. *Legal Standard for Deliberate Indifference*

In order to establish an Eighth Amendment violation, a prisoner must satisfy a two-part test containing both an objective and a subjective component. The Eighth Amendment standard requires proof that (1) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation; and (2) the prison official acted with a sufficiently culpable

1    state of mind. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The objective component of an

2    Eighth Amendment claim is "contextual and responsive to 'contemporary standards of

3    decency.' " *Hudson v. McMillian,* 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble,* 429 U.S.

4    97, 103 (1976)).

5        The state of mind requirement under the subjective component of the Eighth

6    Amendment standard has been defined as "deliberate indifference" to an inmate's health or

7    safety. *Farmer,* 511 U.S. at 834. Under the "deliberate indifference" standard, a prison

8    official cannot be found liable for denying an inmate humane conditions of confinement unless

9    the official knows of and disregards an excessive risk to inmate health or safety. *Id.* at 837.

10

11        The Ninth Circuit has explained that "[p]rison officials are deliberately indifferent to a

12    prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical

13    treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation marks

14    omitted). An officials' conduct must constitute "unnecessary and wanton infliction of pain"

15    before it violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting

16    *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

17

18        To state a claim for conditions of confinement in violation of the Eighth Amendment, a

19    plaintiff must allege that a defendants' acts or omissions have deprived the inmate of "the

20    minimal civilized measure of life's necessities" and that the defendant acted with deliberate

21    indifference to an excessive risk to inmate health or safety. *Allen v. Sakai*, 48 F.3d 1082, 1087

22    (9th Cir. 1994) (quoting *Farmer*, 511 U.S. at 834). "In prison-conditions cases th[e] state of

23    mind is one of 'deliberate indifference' to inmate health or safety[.]" *Johnson v. Lewis*, 217

24    F.3d 726, 731 (9th Cir. 2000) (citing *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)). A prison

25

26

REPORT AND RECOMMENDATION
PAGE - 14

official does not act with deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

> 2. *Plaintiff's Claim that his Mental Health Illness was Exacerbated Due to Sanctions Fails*

Viewing the evidence in the light most favorable to plaintiff, and thus assuming his mental health was harmed by his solitary confinement, plaintiff has failed to show how the denial of access to books was harmful enough to establish a constitutional violation, or that defendants acted with deliberate indifference to his mental health. Although plaintiff asserts a conclusory allegation that he had no other meaningful activity in solitary confinement other than reading, and that denial of access to books exacerbated his mental health, he has failed to establish how the denial of books caused harm to his mental health. For example, plaintiff's chronos notes, Dkt. 18 (Deshev Decl.), Ex. 4, show that during the period in which plaintiff was denied access to books, it appears plaintiff summoned DOC staff to his cell numerous times claiming mental health emergencies, only to deny any mental health distress when staff arrived. Further, defendants have established that plaintiff received mental health treatment through individualized cell front check-ins, as well as one-on-one therapy. Dkt. 18, ¶ 11. Plaintiff also failed to show defendants knew of, or disregarded, an excessive risk to his mental health, if any, by denying him access to books. Accordingly, defendants are entitled to summary judgment on his claim.

Although the Court concludes plaintiff's claim lacks merit, and therefore does not need to address defendant's argument that plaintiff failed to plausibly allege personal participation in the alleged constitutional violation by defendants Jackson and Deshev, the Court finds

REPORT AND RECOMMENDATION
PAGE - 15

plaintiff's general allegations that defendant Deshev enforced, and defendant Jackson allowed

others to enforce, the sanctions are insufficient to establish personal participation by either

defendant.  *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (finding a plaintiff must

allege facts showing how a defendant caused or personally participated in causing the harm

alleged in the complaint and sweeping conclusory allegations are insufficient to state a claim

for relief); *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

### 3. *Plaintiff's Claims that his Mental Health Exacerbated was Due to Conditions of Confinement*

In plaintiff's response to the motion for summary judgment, he claims his conditions of

confinement in solitary confinement "were already violating his 8th Amendment rights" before

the sanctions were imposed.  Dkt. 23 at 12.  In support of his claim, plaintiff alleges

"[d]efendant Deshev knew of Plaintiff Eckard's history and was aware that he was seriously

mentally ill.  As a mental health professional with a degree in psychology he is aware of the

psychiatric harm that was being caused by Plaintiff's placement in solitary confinement, and

was aware that such conditions were excacerbating [sic] his illness and only making him

worse.  He cannot feign ignorance."  *Id.*

It is "settled that 'the treatment a prisoner receives in prison and the conditions under

which he is confined are subject to scrutiny under the Eighth Amendment.'"  *Farmer*, 511 U.S.

832 (*quoting Helling v. McKinney*, 509 U.S. U.S. 25, 31 (1993)).  The Eighth Amendment

imposes positive duties on prison officials, who must provide humane conditions of

confinement.  *Id.* (citations omitted).  A prison official violates this aspect of the Eighth

Amendment if the alleged deprivations are objectively "'sufficiently serious.'"  *Id.* at 834

(*quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991)) (other citations omitted).  Regarding this

first requirement, "a prison official's act or omission must result in the denial of 'the minimal

civilized measure of life's necessities.'"  *Id.* (*quoting Rhodes v. Chapman*, 452 U.S. 337, 347

(1981)).  Prisoners may have a right not to be in indefinite solitary confinement.  S*ee Wilkinson*

REPORT AND RECOMMENDATION
PAGE - 16

1  *v. Austin*, 245 U.S. 109, 224 (2005) (holding indefinite confinement in a supermax facility

2  violates due process)).

3          Plaintiff has failed to allege specific facts as to how defendants acted to deprive him of

4  the minimal civilized measure of life's necessities to support his claim.  Plaintiff alleges that

5  defendant Deshev was aware that plaintiff's placement in solitary confinement was

6  exacerbating his illness because defendant Deshev is a mental health professional.  As

7  discussed above, and documented in his chronos notes, plaintiff frequently denied experiencing

8  any mental health distress to DOC staff while he was incarcerated in the SOU.  He also

9  received regular mental health treatment.  Nothing in plaintiff's conclusory allegations

10  establishes that defendant Deshev, or any of the other defendants, knew of and disregarded an

11  excessive risk to plaintiff's health or safety.  Because plaintiff has failed to show defendants

12  acted with deliberate indifference, his claim fails..[5]

13          F.      28 U.S.C. §§ 1915(e)(2) and (g)

14          Defendants request that the Court find plaintiff's action frivolous and malicious, and

15  therefore dismiss his action as a strike under 28 U.S.C. §§ 1915(e)(2) and (g).  Under 28

16  U.S.C. §§ 1915(e)(2), a court shall dismiss a case if it determines the action is frivolous or

17  malicious.  A prisoner is barred from bringing an action under 28 U.S.C. § 1915 if the prisoner

18  has, on three or more occasions, brought an action that was dismissed on the ground it was

19  frivolous or malicious.  28 U.S.C. § 1915(g).  Although the Court has concluded that plaintiff's

20  claims lack merit, defendants have not persuaded this Court that this action was clearly

21  frivolous or malicious, and therefore will not consider dismissal as a strike under 28 U.S.C. §§

22  1915(e)(2) and (g).

23

24

25          [5] Defendants also assert they are entitled to qualified immunity because plaintiff cannot show any
violation of his constitutional rights, and because there was no precedent that made it clear to defendants that the

26  sanctions were prohibited. Dkt. 19 at 11-12. As the Court concluded plaintiff's claims lack merit, it is not
necessary to address this argument.

REPORT AND RECOMMENDATION
PAGE - 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## V.    CONCLUSION

For the foregoing reasons, this Court recommends that the defendants' motion for summary judgment, Dkt. 19, be GRANTED, and this action be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **March 15, 2019**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **March 22, 2019.**

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 22nd day of February, 2019.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 18