THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GABRIEL ECKARD,

        Plaintiff,

   v.

ASEN DESHEV, *et al.*,

        Defendants.

CASE NO. C18-1053-JCC

ORDER

This matter comes before the Court on Defendants' motion for summary judgment (Dkt. No. 19), United States Magistrate Judge James P. Donohue's report and recommendation ("R&R") (Dkt. No. 26), Defendants' objections to the R&R (Dkt. No. 27), Plaintiff's objections to the R&R (Dkt. No. 29), and Plaintiff's motion for extension of time and subpoena (Dkt. No. 28). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby OVERRULES Defendants' and Plaintiff's objections, ADOPTS the R&R, GRANTS Defendants' motion for summary judgment, and DENIES Plaintiff's motion for extension of time and subpoena for the reasons explained herein.

## I.    BACKGROUND

Plaintiff was a prisoner at the Monroe Correctional Complex ("MCC") from April 2017 to September 2018. (Dkt. Nos. 17-1 at 1, 18 at 1.) The Special Offenders Unit ("SOU") of the MCC is a highly-regulated and segregated custody unit. (Dkt. Nos. 6 at 5, 18 at 1.) Plaintiff filed

a lawsuit pursuant to 42 U.S.C § 1983, arising out of sanctions issued by MCC correctional officers that denied him access to books and to the book cart. (Dkt. No. 6.) Plaintiff asserts that these sanctions violated his First, Eighth, and Fourteenth Amendment rights. (*Id.*) Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, and costs. (*Id.* at 7–8.)

Plaintiff disputes Defendants' characterization of the conduct that resulted in sanctions, and denies that the conduct occurred.[1] (Dkt. No. 23 at 1.) According to declarations and documents produced by Defendants, Plaintiff was sanctioned for sexually harassing a female correctional officer from his cell on December 9, 2017. (Dkt. No. 16-1 at 10.) Plaintiff was infracted and found guilty in a disciplinary hearing. (*Id.*) Plaintiff received a sanction of 60 days without personal property, including books. (*Id.*) On January 2, 2018, Plaintiff threatened the same correctional officer by telling her that he would get her address upon his release and kill her. (*Id.* at 24.) Again, Plaintiff was infracted, and upon a finding of guilt at a disciplinary hearing, he was sanctioned to another 60 days without access to the book cart, among other things. (*Id.* at 1.) Plaintiff filed appeals of both findings of guilt, which were upheld. (*Id.* at 12, 14, 28, 31.)

On June 7, 2018, Plaintiff was brought a receipt to sign for books that he had ordered. (Dkt. No. 6 at 4.) A correctional officer told Plaintiff that he could not have the books because of his present sanctions. (*Id.*) Plaintiff then filed a grievance about the withholding of his books, and he received a response that he was not currently permitted to possess books as a result of his sanctions. (*Id.* at 5.) Plaintiff appealed the decision of the grievance, which was dismissed as untimely. (*Id.*) Plaintiff commenced his § 1983 action shortly after his books were withheld. (*See* Dkt. No. 1.)

---

[1] Plaintiff objects to Judge Donohue "stating [the alleged acts] as if they were true, when [they] have not been proven beyond a reasonable doubt . . . ." (Dkt. No. 29 at 1.) Judge Donohue and this Court must decide motions for summary judgment based on the evidence in the record. *See* Fed. R. Civ. P. 56. Plaintiff did not provide evidence refuting Defendants' declarations or documentation supporting their description of Plaintiff's conduct. Therefore, Judge Donohue properly concluded that the conduct occurred.

Defendants moved for summary judgment. (Dkt. No. 19.) Judge Donohue considered the motion for summary judgment and issued an R&R recommending granting summary judgment, to which Plaintiff and Defendants both object. (Dkt. Nos. 27, 29.) On the same day that Plaintiff filed objections to the R&R, he also filed a motion for an extension of time and to require the MCC to send him documents that he asserts will support his claims. (Dkt. No. 28.)

## II. DISCUSSION

### A. Legal Standards

#### 1. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

#### 2. Section 1983

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must set forth the specific factual bases upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 606 F.2d 1089, 1092 (9th Cir. 1980). Specifically, a plaintiff must show (1) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was

proximately caused by a person acting under color of state or federal law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a plaintiff must allege facts showing how individually-named defendants caused or personally participated in causing the constitutional or statutory violations alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

### B. First Amendment Claims

The R&R concludes that Plaintiff's First Amendment rights were not violated and recommends that Defendants' motion for summary judgment be granted. (Dkt. No. 26 at 10.) Plaintiff asserts that Defendants violated his First Amendment rights by denying him access to books because the sanction did not serve a legitimate penological purpose. (Dkt. No. 6 at 3–7.) Prisoners retain First Amendment protections, but their rights are subject to restrictions to serve the needs of the government. *Turner v. Safley*, 482 U.S. 78, 89 (2006) (holding that a prisoner's First Amendment rights can be infringed upon if the infringement is "reasonably related to a legitimate penological interest."). In cases analyzing prison regulations, the *Turner* factors guide the Court in determining whether the regulation is reasonably related to a legitimate government interest. *Beard v. Banks*, 548 U.S. 521, 529 (2006). The factors considered by the Court are: (1) whether there is a valid, rational connection between the regulation and the interest used to justify the regulation; (2) whether prisoners retain alternative means of exercising the right at issue; (3) the impact the requested accommodation will have on prisoners, prison staff, and prison resources generally; and (4) whether the prisoner has identified easy alternatives to the regulation which could be implemented at a minimal cost to legitimate penological interests. *Turner*, 482 U.S. at 89–91. Additionally, courts should afford prison officials "substantial" deference when analyzing whether a prison regulation is necessary and justified by a penological need. *Beard*, 548 U.S. at 528.

The first factor is the most important when assessing a prison regulation's constitutionality. *Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005). In this case,

declarations of prison officials support Defendants' assertion that Plaintiff's sanctions were imposed to improve prisoner behavior in a unit that has few privileges to remove. (*See* Dkt. Nos. 16 at 3, 17 at 2–3.) In such populations, removal of these privileges, even those relating to constitutional rights, may be the only tool left that allows prison officials to guide prisoners' behavior. *See Overton v. Bazzetta*, 539 U.S. 126, 134 (2003) (holding that revoking important privileges "is a proper and even necessary management technique to induce compliance with the rules of inmate behavior, especially for high-security prisoners who have few other privileges to lose.").

Plaintiff argues that books were not the cause of the sanctioned behavior. (Dkt. No. 29 at 13.) But Plaintiff has not offered evidence that the sanctions—the removal of his access to books—were imposed because of something other than the need to control prisoner behavior. A prison official may impose a sanction to correct unsafe or problematic behavior, even if the item or privilege removed by the sanction is not the direct cause of such behavior. *Beard*, 548 U.S. at 531–32 (holding that a sanction that withheld certain reading material was reasonable because the defendants cited "the need to promote better behavior" among prisoners). As such, the reasonableness analysis does not require that the revoked privilege itself *caused* the unwanted behavior, but rather revoking the privilege will promote a legitimate goal—in this case, promoting safety and security through improved behavior. *See id.* at 532.

The second *Turner* factor asks whether prisoners have alternative means of exercising the right at issue; here, Plaintiff's First Amendment right. *See Turner*, 482 U.S. at 90. Defendants concede that Plaintiff likely did not have an alternative means of accessing books during the time he was sanctioned, but argue that the sanctions were scheduled to end after 60 days. (Dkt. Nos. 16 at 1, 19 at 9.) While the lack of any alternative may constitute evidence that the policy is unreasonable, it is not conclusive. *See Beard*, 548 U.S. at 532; *Overton*, 539 U.S. at 135. Because the documentation of the sanction suggests that it was temporary, Plaintiff's lack of an alternative means of exercising his First Amendment right for a short time does not render the

sanctions at issue unreasonable.

The third *Turner* factor considers the impact on the prison staff and prisoners. *Turner*, 482 U.S. at 90. Because the SOU is a restrictive housing unit and prisoners have few privileges, prison staff would be negatively impacted if they were unable to issue sanctions that revoked those privileges. While the removal of Plaintiff's access to books was a serious sanction, Plaintiff received 54 documented sanctions in 18 months—and his pattern of conduct led prison officials to issue more serious sanctions in an effort to control his behavior. (Dkt. No. 17 at 1.) As such, an inability to issue serious sanctions, such as removal of access to books, would negatively impact prison staff because it would unnecessarily leave prison officials less able to change prisoners' behavior.

As to the fourth *Turner* factor, Plaintiff has not identified an alternative that would infringe less on his First Amendment rights. *See Turner*, 482 U.S. at 90–91; (Dkt. No. 29 at 13.)

Thus, Defendants have established that the sanctions were reasonably related to the neutral and legitimate penological goal of improving prisoners' behavior and providing a safe environment for staff and prisoners alike. (*See* Dkt. Nos. 17-1 at 2, 18 at 2–3.) Plaintiff did not offer evidence that controverts Defendants' declarations establishing that the sanctions were imposed in an effort to change Plaintiff's offensive behavior and to promote a safe environment. As a result, Plaintiff's First Amendment claim fails. Therefore, the Court ADOPTS the R&R, and GRANTS Defendants' motion for summary judgment on this ground.

**C.    Policy Claim**

The R&R concludes that Plaintiff's claims that the underlying Department of Corrections ("DOC") policy was unconstitutional, or that a DOC policy was violated, cannot succeed, and recommends that Defendants' motion for summary judgment be granted. (Dkt. No. 26 at 11.) Because Plaintiff did not name any municipality as a defendant, Plaintiff cannot prevail on a claim that a policy, custom, or permanent and well-established practice gave rise to the alleged constitutional violations. *See Monell v. Dep't. of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978). The

Court also notes that Washington State makes policy for the DOC, and Plaintiff is precluded from filing suit against Washington State under the doctrine of sovereign immunity. *See Swearington v. Calif. Dep't. of Corr. & Rehab.*, 624 F. App'x. 956, slip op. at 1 (9th Cir. 2015) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).

Further, Plaintiff has not established that Defendants violated either DOC policy 320.255 or Washington Administrative Code § 137-32-030, which provide that access to reading materials may be restricted if safety or security considerations are implicated. (Dkt. No. 18-1 at 14.) As such, Plaintiff's claims that the sanctions denying him access to books violate DOC policy 320.255 and Washington Administrative Code § 137-32-030 fail. Therefore, the Court ADOPTS the R&R and GRANTS Defendants' motion for summary judgment on this ground.

### D. Due Process Claim

The R&R concludes that Plaintiff's rights to due process were not violated and recommends that Defendants' motion for summary judgment be granted. (Dkt. No. 26 at 12.) Plaintiff asserts that Defendants violated his rights to due process when he was denied the opportunity to attend his disciplinary hearings on December 9, 2017 and January 2, 2018. (Dkt. No. 29 at 14–15.) Plaintiff asserts that because he did not sign the notice of hearing forms, he was precluded from attending. (*Id.*) Defendants argue that Plaintiff was given the notices for both hearings, but refused to sign them and thereby waived his right to appear at the hearings. (Dkt. No. 25 at 1–2.) Defendants further assert that Plaintiff received hearing minutes and findings. (*Id.*) Defendants' evidence shows that Plaintiff's due process rights were satisfied because he: (1) was provided with notice of the hearing; (2) had an opportunity to present evidence and witnesses; and (3) received a written statement of the findings. *See Wolff v. McDonnell*, 418, U.S. 539, 564–66 (1974). Additionally, Plaintiff appealed the findings of his hearings. (*See* Dkt. No. 16-1 at 28, 32.) Therefore, because Plaintiff has not established that his due process rights were violated, no genuine dispute of material fact exists. The Court ADOPTS the R&R and GRANTS Defendants' motion for summary judgment on this ground.

### E. Eighth Amendment Claims

The R&R concludes that Plaintiff did not demonstrate that his Eighth Amendment rights were violated and recommends that Defendants' motion for summary judgment be granted. (Dkt. No. 26 at 17.) In Plaintiff's complaint, he claimed that Defendants' denial of his access to books exacerbated his mental illness and violated his Eighth Amendment rights. (Dkt. No. 6 at 6–7.) In Plaintiff's objections to the R&R, he "concedes that he may not have stated a viable Eighth Amendment claim" and states that "no more needs to be said about the issue." (Dkt. No. 29 at 16.) Defendants provided evidence that Plaintiff received mental health treatment during the period that Plaintiff did not have access to books, which he often refused. (*See generally* Dkt. No. 18-1.) Further, Plaintiff did not establish that Defendants acted with deliberate indifference to his health or safety by imposing the sanctions against him. (*See* Dkt. No. 26 at 12–17.) As such, no genuine dispute of material fact exists. The Court ADOPTS the R&R and GRANTS Defendants' motion for summary judgment on this ground.

### F. Frivolous and Malicious Action

The R&R concludes that Plaintiff's lawsuit was not frivolous or malicious and recommends that Plaintiff's action should not be dismissed as such. (Dkt. No. 26 at 17.) Defendants object and ask the Court to find Plaintiff's action frivolous and malicious, and to dismiss it as a strike under 28 U.S.C. § § 1915(e)(2) and (g).[2] (Dkt. No. 27 at 1.) Although the Court has concluded that Plaintiff failed to provide evidence that his claims are meritorious, the Court is not persuaded that this action was clearly frivolous or malicious, and therefore will not consider its dismissal as a strike under 28 U.S.C. § § 1915(e)(2) and (g). Therefore, the Court OVERRULES Defendants' objection and ADOPTS the R&R on this ground.

### G. Motion for Extension of Time and for Subpoena

In response to Defendants' motion for summary judgment, Plaintiff filed a motion for

---

[2] If a prisoner has had three actions dismissed as frivolous or malicious, he or she is barred from bringing future *in forma pauperis* actions. 28 U.S.C. § 1915(g).

appointment of counsel and for an extension of time, asserting that he did not have access to writing materials. (Dkt. No. 21.) Judge Donohue denied the motion as moot because Plaintiff subsequently filed a response to Defendant's motion for summary judgment, and was apparently no longer unable to access writing materials. (Dkt. No. 24 at 1–2.)

Plaintiff now requests an extension of time to file objections to the R&R and for an order requiring the MCC to send Plaintiff legal documents that were not transferred with Plaintiff to the institution where he is currently housed. (Dkt. No. 28.) Plaintiff asserts that the documents would show that the sanctions imposed against him were scheduled to continue through his sentence and thus support his First Amendment claim, and that he needs the materials to respond to the R&R. (*Id.* at 1–2.) Such evidence should have properly been filed in response to Defendants' motion for summary judgment because it may have created a genuine dispute about the goals of the sanctions. In responding to Defendants motion for summary judgment, Plaintiff did not assert that he needed the documents. (*See* Dkt. No. 23.) Therefore, Plaintiff's motion untimely. He failed to raise the issue that he needed access to legal documents in his previous pleadings, and an extension of time to obtain those documents now would be meaningless. The Court DENIES Plaintiff's motion for extension of time and for subpoena seeking documents at the MCC.

## III. CONCLUSION

For the foregoing reasons:

(1) Plaintiff's and Defendants' objections to the R&R are OVERRULED (Dkt. Nos. 27, 29);

(2) The R&R is ADOPTED (Dkt. No. 26);

(3) Defendants' motion for summary judgment is GRANTED (Dkt. No. 19);

(4) Plaintiff's complaint is DISMISSED with prejudice (Dkt. No. 6); and

(5) Plaintiff's motion for extension of time and for subpoena is DENIED (Dkt. No. 28).

//

DATED this 3rd day of April 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE